IN THE UNITED STATES DISTRICT COURT RECEIVED
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2006 FEB 24 A 9: 57

| | |
|---|---|
| ANTON FRANK PUSZTAI, ) | |
| Movant/ Plaintiff, ) | |
| ) | |
| v. ) | CIVIL CASE NO. 2:06cv173-1D |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| Respondent/Defendant. ) | |

**INDEPENDENT ACTION FOR DISTRICT COURT TO VACATE, SET ASIDE PREVIOUS ORDERS/JUDGEMENTS MADE IN CRIMINAL CASE. NO. 00-109-N, FOR FRAUD ON THE COURT BY GOVERNMENT PROSECUTORS AND GRANT A JUDGEMENT OF ACQUITTAL AND IMMEDIATE RELEASE OF A PRISONER IN FEDERAL CUSTODY.**

**COMES NOW,** ANTON FRANK PUSZTAI, movant, pro se and files this independent action, requesting relief from previous Orders/Judgements of the District Court in Criminal Case No. 00-109-N, as the Orders/Judgements, were procured by fraud on the court, by government prosecutors and caused two innocent defendants to be falsely convicted. In support thereof, movant states as follows:

1.       The facts and procedural history of this case are contained in Addendum 1 of this motion.

2.       But for the fraud on the court, the trial judge would have denied the government motion to allow two witnesses to testify via two way video teleconference.

3.       The fraud prevented the court from a fair adjudication of the case and deprived defendants a fair chance to mount a defense.

4.       Without the admission of the testimony obtained by fraud, defendants were entitled to a Judgement of Acquittal

-1-

at the conclusion of the government's case in chief.

5.          Had the Court known of the fraud it would have granted defendants Rule 33 motion.

6.          The Petit Jury would have acquitted defendants on all counts of the indictment but for the admission of testimony of two foreign witnesses, obtained by fraud.

### JURISDICTION OF THE COURT

An aggrieved party may initiate a new asction to seek relief from an Order/Judgement of the District Court obtained by fraud on the court, by independent action. See 11 Charles Alana Wright, Arthur R. Miller and Mary Kay Kane, **Federal Practice and Procedure** §2851, at 229 (Civil 2.Ed.(1995). The motion may be filed notwithstanding that the defendant may be on Appeal. See **Stone v. Immigration and Naturalization Serv.**, 514 U.S. 386 401; 115 S.Ct. 1537; 131 L.Ed 2d 465 (1995).

The District Court also has an inherent power to impeach for fraud and can re-open a case sua sonte. **Demjanjuk v. Petrovsky**, 10 F. 3d 338 (6th Cir. 1993). The right to do so is founded on the court's independent and substantative jurisdiction. Accordingly, the district court does not have to wait for the Eleventh Circuit to issue the mandate, having vacated the conviction of the defendants and remanded case for a new trial. See **United States v. Yates**, ____F. 3d.____(11th Cir.Feb.13, 2006).

Movant requests motion be referred to the Honorable Judge Anthony Alaimo, as the trial judge should be afforded the opportunity of rectifying the fraud on his court.

## FRAUD ON THE COURT

Only the United States Court of Appeals has articulated express elements of fraud on the court. It set forth five elements of fraud on the court which consist of conduct:

"1. On the part of an officer of the Court;

2. That is directed to the judicial machinery itself;

3. That is intentionally false, wilfully blind to the truth, or is a reckless disregard of the truth;

4. That is a positive averment or is a concealment when one is under a duty to disclose;

5. That deceives the Court." **Demjanjuk v. Petrovsky,** 10 F. 3d 338, 348 (6th Cir. 1993)

Other Appellate Courts have characterized the doctrine "as a scheme to interfere with the judicial machinery performing the task of impartial adjudicating, as by preventing the opposing party from fairly presenting his case or defense." **In Re: Coordinated Pretrial Proceedings in Anti Antibiotic Antitrust Actions,** 538 F.2d 180, 195 (8th Cir. 1976); See also **Rozier v. Ford Motor Co.**, 573 F.2d 1332, 1338 (5th Cir. 1978)( holding only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence in which an attorney is implicated, will constitute fraud on the court."

Additionally, the fraud must be supported by clear, unequivocal and convincing evidence. See: **Herring v. United States of America**, 424 F.3d 384 (3rd Cir. 2005).

-3-

When the party is the United States, acting through the Department of Justice, the distinctions between client and attorney actions are meaningless. The Department acts only through its attorneys. Although there are cases that a "plan or scheme" must exist in order to find fraud on the court in the case of Assistant United States Attorney's, a reckless disregard for the truth is sufficient to sustain a charge of fraud. See **Demjanjuk,** 352-3.

As Assistant United States Attorney's Tommie Hardwick and Trial Attorney Linda Marks both work for the Department of Justice, movant satisfies first element that the fraud was committed by "officers of the court".

Whatever else the Confrontation Clause may allow, the right of confrontation is for the defendant to waive and not the government to **select** which procedure affords greater protection and certainly not a government witness to **compel**, simply because he prefers the proceedure. By inference, prefers not to confront the defendant.

### THE PLAN AND SCHEME.

Government prosecutors knew of the significance of Dr. Konkoly's testimony as early as July of 2000. During the grand jury proceedings, FDA Special Agent Robert West was asked what the involvement of the Australian doctor will be in the proceedings. Special Agent West stated he was not an attorney but " if this were to go to trial, he [Konkoly] will have to testify. "

Government prosecutors Hardwick and Marks conducted those grand jury proceedings. They knew that Konkoly's testimony was essential to obtain a conviction and that he was beyond the subpeona powers of the United States. The prosecutors were also well aware that there was an existing method of preserving testimony of witnesses who may be "unavailable" for trial, by way of a Rule 15 deposition. This method had been specifically legislated by Congress and tested by the Courts.

In fact, the government's whole en banc argument was that it could have used a Rule 15 deposition and as two way video teleconferencing affords greater protection to a defendant than a deposition, the defendant's confrontation rights were not violated. Yet, the record is deathly silent on any attempt by the government to preserve this crucial but otherwise unavailable testimony.[2]

This fact did not go unnoticed by the Eleventh Circuit. Writing for the majority, Circuit Judge Cox[3] opined:

> "Moreover, in this case, the Government never requested a Rule 15 deposition. The Government has never maintained that any special circumstance created an inability to take such a deposition or that it would have been impossible to allow Defendants to attend such a deposition."

**Yates**, p.21

---

2.    The witness could have been stuck by lightening or a car, or suffered a heart attack and died. It is inconceivable that the government did not have a plan to introduce the testimony of it's witness well before making application to the Court for the use of the unconstitutional procedure.

3.    Senior Circuit Judge Cox elected to participate in the decision pursuant to 28 U.S.C. §46(c).

Unbeknown to the defendants or the Court, government prosecutors had a plan for the introduction of the foreign witnesses' testimony. Prior to filing its motion, the Government had received a letter from Dr. Konkoly dated November 29, 2001 and faxed to the government the same day, wherein the witness expresses a **preference** for video conferencing stating:

"[t]he video conferencing would be best."

[R3, 407-1; Exhibit Γ]

The clear implication of this statement is that the government had provided Dr. Konkoly with various options for taking his testimony, from which he selected video teleconferencing as the most convenient for him. That type of accommodation is blatantly contrary to **Maryland v. Craig**, 497 U.S. 836, 850; 110 S.Ct. 3157; 111 L.Ed 2d 666 (1988), because it is devoid of a case-specific-necessity.

The Court is asked to order the Government to immediately file all correspondence between Dr. Konkoly, Fletcher Christian and the government relating to:

(a)    Personally appearing at trial;

(b)    The use of a Rule 15 deposition;

(c)    The use of two way video teleconferencing; and

(d)    The foreign witnesses refusal or willingness to travel to the United States and appear personally at trial. The Court can conduct an in camera inspection of these documents and make the relevant parts available to the defendant, relating to the issues presented herein.

- 6 -

Regardless of whatelse an in camera inspection will reveal, it is obvious Konkoly was offered a choice of procedures and those options, were underlined concealed from the defendants and the Court.

At the time two way video teleconferencing was offered to Konkoly, the government knew the procedure required Court approval. They then put into place a plan to obtain that approval to accommodate its witness who preferred not to confront the defendant face to face. Both the plan and fraud were directed to the judicial machinery itself. The second element of fraud on the court is satisfied.

The plan involved waiting until the very last moment before motioning the Court for approval of the procedure. Some six weeks passed from the time the government knew an application to the Court for the procedure was required and before it was actually made. As a matter of trial tactics, government prosecutors lay in wait to ambush the Court and surprise the defendants with their late motion. The motion was not just seriously dilatory, but planned to be dilatory.

The Government knew the pressures on both the Court and the defendant close to trial. It counted on the reluctance of the District Court to deny a motion that had a serious impact on the outcome of the case. In its Petition for En Banc Re-Hearing, the government stated that if its motion for video teleconferencing was denied, it would have motioned for a Rule 15 deposition or used the adverse ruling to convince the witness to personally appear. On its own

admission, the government knew that there was no necessity for the procedure, let alone a case specific necessity. Moreover, if it was capable of convincing the witness to appear after an adverse ruling, it was required to use reasonable means to secure the presence of the witness before the ruling.

The Government's reliance on deposition cases was always misplaced, but every deposition case has one element in common - a good faith attempt by the government to secure the presence of a witness and accommodate the defendant. The Supreme Court has long held that a witness is **not unavailable** for the purposes of the confrontation clause unless the prosecutorial authorities made a good faith attempt to secure the presence of the witness at trial. **Barber v. Page**, 390 U.S. 719, 724-5; 88 S.Ct. 1318; 20 L.Ed 2d 255 (1968). Even under Fed. R. Evidence 804(a)(5), a witness is only unavailable if the government is unable to procure the declarant's attendance.....by process or **other reasonable means**.

The Australian witnesses were not unavailable for the purposes of the confrontation clause, nor did the government satisfy the requirements of Fed. R. Evidence 804(a)(5). Quite the contrary, the government planned the use of the procedure with its witness and relied on the authority, power and prestige of office for the Court to assume good faith efforts were made to secure the presence of the witnesses.

- 8 -

As an officer of the court, prosecutors have a special relationship and loyalty to the court that demands integrity and honest dealing with the court. In this case, prosecutors departed from that standard by making arguments to the court that were false, or at the very least, had a reckless disregard for the truth.

### ELEMENT THREE :   CONDUCT THAT IS INTENTIONALLY FALSE, WILFULLY BLIND OR IS A RECKLESS DISREGARD OF THE TRUTH.

The government claimed there was an important public policy that justified abrogating the defendant's right of confrontation. What they didn't inform the Court is that it was important for them to accommodate the preferences of its witness, without who's testimony they could not obtain a conviction.

They government claimed there was a case-specific-necessity, yet have never been able to identify anything that remotely resembles a case specific necessity. They advanced ludicrous arguments that "only Konkoly could testify to certain things", which may have been necessary for a conviction, but it was not a case specific necessity. Prosecutors knowingly incorrectly argued the law because they purposefully planned the procedure with their witness. They claimed that the procedure afforded the defendant greater protections than a Rule 15 deposition, when in reality, it afforded Konkoly greater protection from detection of perjury. The government should have been aware, that the purposeful preparation of a procedure is contrary to **Craig**. See **Brumley**

- 9 -

**v. Wingard**, 269 F.3d. 629. Interestingly, the government also argued in this case that the procedure afforded the defendant greater protection.

A case specific necessity never existed in this case. There was a legislated procedure by Congress, the government were aware of this fact and they simply chose not to make application for the procedure. It is not surprising that the Eleventh Circuit could not identify a case specific finding either.

### ELEMENT FOUR:  CONCEALMENT FROM THE COURT

The government is under a duty to ensure that justice is done. It is also under a duty to ensure that motions and arguments before the court are made in good faith. Prosecutors concealed the following material facts from the Court:

1.      That they had negotiated with their witness the best procedure he preferred.

2.      That the witness merely expressed a preference.

3.      That no good faith attempt was made to secure the presence of the foreign witnesses.

4.      That no attempt was made to accommodate the defendants by asking them which procedure they preferred.

5.      The reason for their serious dilatory conduct in making application to the court for the procedure.

Had the government been forthright in its conduct and representations to the court, its motion for the use of the constitutionally dubious procedure would have been denied.

-10-

If the Government came before this or any other democratic court in the World (except perhaps Zimbabwe) a month before trial and stated: "We could have used a Rule 15 deposition but six weeks ago our witness informed us that video teleconferencing would be best. Accordingly, this court is asked to abrogate the defendant's right of confrontation because we the government know which procedure is best for the defendant", there would have been laughter in the courtroom. Well this defendant is not laughing. He has been deprived 60 months of life and liberty by two prosecutors who had a blatant disregard for   constitutional rights.

The District Court was decieved by the conduct of the prosecutors into granting a motion that would have otherwise been denied.

Every count in the indictment required an element of fraud. While the government produced evidence of re-packaging, mis-labelling, improperly using refills, increasing quantities of customers prescriptions to fill other orders and using the word "Clinic" in the business name, the reality is that every customer recieved their order of genuine medication. It follows that the "fraud", could not relate to the product. The only possible fraud viewing the government's evidence at the highest, related to the authenticity of the prescriptions.

Accordingly, the only possible fraud in this case related to the authenticity and authorization of the prescriptions associated with customers orders. Without the

-11-

testimony of Konkoly, or at least one doctor, the defendant's should have received a judgement of acquittal at the conclusion of the government's case in chief.

The government was willing to take the gamble of using a constitutionally dubious procedure to avoid a judgement of acquittal. On a worse case senario, it created a win only situation, whereby if the procedure was declared unconstitutional, the defendants would only receive a new trial. See **Lockhart v. Nelson**,488 U.S. 33, 109 S.Ct. 285, 102 L.Ed 2d 265 (1988).

What the government did not count on is to have their egregious conduct exposed. That conduct is supported by clear, unequivocal and convincing evidence. The district court was deceived into granting a constitutionally dubious procedure which denied the defendants a fair trial. Even under **Lockhart**, the egregious conduct bars a re-trial under Double Jeopardy.

This Court should now craft a mechanism to have two innocent defendants immediately released.

Previous orders of the Court are required to be vacated and the defendants should receive a judgement of acquittal, with prejudice, as a warning to other prosecutors, who place the need for a conviction above the integrity of the Court and the Constitution.

Respectfully submitted,

This 20th day of February, 2006

ANTON FRANK PUSZTAI,
#10846-002, IBL,
FCI Yazoo City, MS.

## CERTIFICATE OF SERVICE

I, Anton Frank Pusztai, certify under penalty of perjury that the foregoing "Independent Action for the District Court to Vacate, Set Aside, Previous Orders/Judgements, Made in Criminal Case No: 00-109-N, For Fraud Upon the Court By Government Prosecutors and Grant a Judgement of Acquittal and Immediate Release of a Prisoner in Federal Custody", was served on the individuals named below, by pre-paid first class U.S. Mail, by depositing same in mailbox provided for that purpose by FCI Yazoo City on this the 20th day of February, 2006

Ms. Tommie Hardwick,
AUSA,
P.O.Box 197,
Montgomery, AL. 36106

Ms. Linda Marks,
AUSA,
P.O.Box 386,
Washington, D.C. 20044

The Honorable Judge Anthony A.Alaimo,
United States District Judge,
c/o Clerk of Courts,
Atlanta, Georgia.

Mr. Ronald Wise,
Attorney at Law,
2000 Interstate Park Drive,
Suite 105,
Montgomery, AL. 36109

Mr. Timothy Halstrom,
Attorney,
4170 Lomac Street,
Montgomery, Al. 36106

ANTON    FRANK    PUSZTAI,
#10846-002, IBL,
FCI Yazoo City,
P.O.Box 5000,
Yazoo, MS. 39194