**ADDENDUM ONE**

## 1. BACKGROUND AND PROCEDURAL HISTORY

### A. Course of Proceedings Below and Statement of Incarceration.

Movant is presently incarcerated in FCI Yazoo City, Yazoo, Mississippi and has been denied his liberty since his initial arrest on January 20th, 2001.

Movant was named in a 30 Count indictment charging him in 28 counts: Conspiracy to Defraud United States (Count 1); Mail Fraud (Counts 2-11); Dispensing Drugs without a valid prescription (Counts 12-21); Operation of an Unregistered Drug Facility (Count 22); Unlawful Wholesale Distribution of Prescription Drugs (Counts 23-27)[These counts were dismissed on motion by government prior to trial.] and Conspiracy to Commit Money Laundering (Count 30). Mail Fraud was used as the predicate act for Count 30.

On or about January 20th, 2001, movant was arrested in Frankfurt, Germany at which time he waived extradition to the United States to answer the charges of the indictment. (Detention Hearing Transcript, Page 8).

Movant arrived from Germany on April 6th, 2001 and was arraigned on April 16th, 2001, at which time he entered a plea of not guilty to all counts for which he was charged

He was ordered detained after a detention hearing was held concurrent with the arraignment.

On January 10, 2002, the Government filed a Motion to Permit Witnesses to Testify at trial via Video

Teleconference. [R1-248] Government prosecutors represented to the Court that it's foreign witnesses refused to travel to the United States voluntarily but were willing to provide crucial evidence via two way video teleconferencing.

On January 22, 2002 movant filed a Response to the Government's Motion and requested oral argument. The Trial Judge granted the Government's motion to allow two way video teleconferencing of two crucial but unavailable witnesses, at the same time denying defendant's request for oral argument.

On January 29, 2002, the Trial Judge held a conference call with all parties, in which it asked the government to provide declarations or affidavits from two foreign witnesses as to their refusal to voluntarily appear. Interestingly, the Court had already granted the government's Motion based solely on the government's representations that the foreign witnesses refused to appear.

On February 11th, 2002, the government filed a "Supplemental Reply to Defendant's Responses to Government's Motion to Permit Witnesses to Testify at Trial Via Video Teleconference." See Exhibit 1

On June 18th, 2002, the sentencing hearing was held at which time movant's Motion for New Trial was heard. The Court denied the Motion [R8-94]. The Court then determined that the 2001 U.S.S.G. Manual should be used for sentencing adopting it's previous findings in Co-Defendant Yates' case.

Movant filed his Notice of Appeal on June 26, 2002 [4-469]. Oral argument was heard before panel on August 8, 2003.

On November 24, 2004 in a published opinion, **United States v. Yates**, 391 F.3d 1182 (11th Cir. 2004), defendant's convictions were vacated and the case remanded for a new trial. On March 30, 2005, the Eleventh Circuit granted **En Banc** ReHearing. On February 13, 2006, the full court again vacated defendants' convictions and remanded for a new trial. **United States v. Yates**,-----F. 3d-----, (11th Cir. 2006)

## B. Statement of the Facts

Movant is an Australian national. He is a former Australian attorney but in more recent times a computer and marketing programmer. [R12 - 155]. Sometime after July 16, 1998, movant developed an Internet pharmacy business in Australia which was subsequently transferred to Clanton, Alabama called Norfolk Men's Clinic. [R12-170]. As part of that business, movant set up a web site containing information about obtaining Viagra over the Internet. An interested person would fill in a medical questionnaire and transmit it via the internet to a "parent directory" in Australia. It would then be submitted to doctors who would review the questionnaire and if approved, a prescription would be

computer generated. During the initial operation of the business, the prescription was sent to a Florida Pharmacy called "Preferred Prescription Plan", to be filled. The viagra was sent to Norfolk Men's Clinic in Clanton, where it was re-packaged and sent to the person who ordered the product. [R12 - 175 through 181].

There were some ten doctors associated with reviewing questionnaires: Dr. Valeriu Biolan, a Romania doctor [R12-174 and 187]; Dr. Tibor Konkoly, an Australian doctor [R12-174; Dr. Roger Eiland, a doctor in Clanton, Alabama who re-wrote prescriptions based on foreign prescriptions [R12-180]; Dr. Elliot, from Hawaii [R9-45]; Dr. William Lattos, a Californian physician [R9-44]; Dr. Boris Mraovic, a Croation doctor residing in California [R12-114]; Dr. Diaz, an Arizona physician [R10-109 through 111]; Dr. Leonard Utu, a resident of Australia [R8-105]; Dr. Victor, a Romanian doctor working under the supervision of Dr. Biolan [R12-272] and Dr. Richard Nelson, also an American physician. [R12-273].

Foreign doctors were controlled by a separate entity called O.S. NORFOLK, a duly registered company in Romania, owned by a George Schioparlan. Prescriptions and consultations were contracted out to that company in which the defendants owned no shares or financial interests.

The record is devoid of any attempt by the government to subpeona or otherwise acquire the testimony of

any of the other non-party doctors [1] for presentation at trial.

Trial was scheduled to commence on February 8, 2002. On January 10, 2002, one month prior to commencement of trial, the Government moved to have two Australian citizens testify via two way video teleconferencing. Notwithstanding that the Government knew of the importance of the witnesses' testimony and the alleged refusal to appear at trial to testify as early as December 2000 [R10-314] fourteen (14) months before the commencement of the trial, it made no effort to secure and preserve their testimony by the statutorily approved method of a **Rule 15** deposition.

In support of it's motion for testimony via two way teleconference, the Government contended that there was an important Public Policy of justly and expeditiously resolving criminal cases and an emerging need to provide a mechanism to provide the factfinder with crucial but otherwise unavailable evidence. The Government further suggested the court could treat the testimony of the witnesses in Australia as though it were videotaped testimony admissible under Rule 15 deposition. The Government proffered the witnesses were "essential to the government's case-in-chief"[R1-248,p.1] and the witnesses were "unwilling to travel to the United States." [R1-248, page 2

---

1.      Dr. Roger D. Eiland was a co-defendant in the case.

The District Court incorporated the respesentation by the Government that the witnesses "<u>are unwilling to travel to the United States</u>" in it's Order granting the government's motion saying, "[t]he witnesses have refused to travel voluntarily to the United States but have agreed to testify via video teleconference...." [R2-314, p.2]. Based on this the Court found the government had met it's burden of demonstrating unavailability according to Rule 804(a). It is instructive to point out here that the trial Court, for some unexplained reason, omitted from the government's burden the requirement of exercising "other reasonable means" to secure the witness' presence at trial. See footnote 7 of the Court's Order, [R2-314, p.26].

Movant was convicted of all counts and his sentence was increased 28 levels on facts that were not pled in the indictment or found by a jury beyond a reasonable doubt. The District Court increased defendant's offense level 18 points holding him accountable for more than $2,500,000.00 in laundered funds. The trial judge made no findings as to how he arrived at this figure and offense level 18 includes the gross funds deposited by the defendants into the various Bank Accounts ($6,500,000.00) See §2B1.1(b)(j). Based substantially on the amount of money laundered, movant was sentenced to a term of imprisonment of 188 months.